# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| SHELLY HARTWICK, | ) | |
| | ) | |
| Plaintiff/Appellant, | ) | |
| | ) | |
| vs. | ) | No. 04 C 8340 |
| | ) | |
| GEORGE CRAIG, | ) | |
| | ) | |
| Defendant/Appellee. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff purchased a house from defendant, soon was dissatisfied with it, and sued to rescind the transaction and for damages, claiming that she had been defrauded. Craig filed for bankruptcy protection and Hartwick filed an adversary complaint, claiming that defendant was indebted to her because of the fraud, and that the debt was non-dischargeable.[1] Bankruptcy Judge Goldgar ruled against her after two days of testimony and consideration of numerous exhibits. She appeals, and we affirm.

Most of plaintiff's efforts are to attack the judge's credibility determinations. As we advised her before she embarked on the endeavor, that is a daunting task. Our standard of review is whether the determinations are clearly erroneous. Judge Goldgar wrote a thorough and careful 33-page opinion. He credited some witnesses and, more particularly, discounted much of plaintiff's testimony. We are unable to comment on the latter because she did not include her own testimony in the record. We accept, therefore, his credibility determinations regarding her testimony. In view of plaintiff's *pro se* status, we have carefully reviewed

---

[1] There is a somewhat continuing refrain in plaintiff's filings that defendant did something illegal or at least improper in filing for bankruptcy in the face of her claim. That is just not so.

everything she has presented, whether or not it is relevant or was even presented to the bankruptcy court. What emerges is a scenario as described by Judge Goldgar – a scenario well supported by the record.

Defendant and his wife rented the "cottage" in 1997, and purchased it in 1998. It was rundown when they purchased it, and particularly after the purchase they engaged in a number of rehabilitation projects.[2] At the time of the sale, the house was almost 70 years old. It had been added to ("jack built") without regard to any update of the heating system; had settled so as to have obvious slanting of floors, indicating a foundation problem; had an antiquated electrical system; and, among other things, needed three space heaters for adequate heat. Defendant did not list these as material defects, conditions that would have a substantial adverse effect on value, and Judge Goldgar concluded that defendant violated the Illinois Residential Real Property Disclosure Act (RRPDA), 765 ILCS 77/1 *et seq.* (2000), and that there was therefore a debt. But he further concluded that defendant, in good faith, did not consider these to be defects, he had lived with them for years – the space heaters provided adequate heat, one just had to be careful not to overload a circuit and blow a fuse, and there had been no further settling after they moved in. None raised substantial safety concerns and they were used to all of them. Moreover, the major ones were obvious; plaintiff was aware of the slanting floors and had to have been aware of the wiring system and the space heaters. She did not justifiably rely on any failure to disclose. Indeed, her real estate agent, Jose Resto, specifically counseled against her purchasing the house because of the "red flags," which he

---

[2] Plaintiff now questions whether they in fact did the work because, pending the appeal, she looked for and did not find any building permits. That information is not part of the trial record; it is unclear that permits were required, and, we note, it is not uncommon for owners residing in a house to make improvements without getting permits, even if permits are required.

thought made the house unsuitable for a single woman with disabilities.

Plaintiff attacks the credibility of her realtor, Jose Resto, because of what she believes are inconsistencies in his testimony. But Judge Goldgar observed the witness and heard the witness' testimony, and that testimony was not inherently incredible. Moreover, his decision did not turn on that testimony. He concluded that Craig did not intentionally make disclosures he knew to be untrue and that plaintiff did not justifiably rely on those disclosures. Rather, "[t]he house's problems were so numerous and so obvious they render irrelevant any misrepresentations or omissions Craig may have made .... Not only were the problems with the house readily apparent, they were readily apparent to Hartwick." She also attacks the credibility of Craig. Again, Judge Goldgar observed the witness and heard his testimony, and that testimony was not inherently incredible. As we have previously noted, the evidence supports the scenario described by the bankruptcy judge. Again, his decision did not turn on that testimony, as that testimony only marginally related to whether or not plaintiff justifiably relied.

A third contention is that Roy Guerra, an electrical contractor plaintiff had look at the house, could have testified that Craig was intending to seek bankruptcy protection if sued by plaintiff. Guerra was not, however, even asked the question -- Judge Goldgar never excluded any such testimony. Further, as we previously noted, there was nothing improper about seeking that protection.

Finally, plaintiff seeks a new trial because the record indicates that Judge Goldgar prohibited Craig from testifying as a sanction for failure to file a trial brief, and, she says, there is no record that it was ever lifted. The sanctions order was entered June 29, 2004. Craig's trial brief was filed the following day and the sanction as to Craig was lifted. The

sanctions order also prohibited Hartwick from pursuing her fraud claim against Craig for failure to file a trial brief relating to that issue. Although the record does not reflect that sanction as lifted, an amended trial brief was filed by plaintiff's counsel on June 30, 2004, and the hearing proceeded on the fraud issue. Indeed, that is what this appeal is all about. The motion for a new trial is denied.

JAMES B. MORAN
Senior Judge, U. S. District Court

May 16, 2005.